Filed 8/29/13  In re Aiden L. CA2/3

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| In re AIDEN L., a Person Coming Under the Juvenile Court Law. | B246475 |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES,<br><br>        Plaintiff and Respondent,<br><br>    v.<br><br>HARLEY L.,<br><br>        Defendant and Appellant. | (Los Angeles County Super. Ct. No. CK94374) |

APPEAL from an order of the Superior Court of Los Angeles County, Marilyn Mordetsky, Juvenile Court Referee.  Reversed and remanded.

Lori A. Fields, under appointment by the Court of Appeal, for Defendant and Appellant.

No appearance by Plaintiff and Respondent.

————————————————

## INTRODUCTION

Father appeals from the order of the juvenile court declaring his son Aiden (2.5 years old) a dependent of the court. (Welf. & Inst. Code, § 300.)[1] Father contends the court abused its discretion in denying him all contact with the child based solely on the child's age. We reverse.

## FACTUAL AND PROCEDURAL BACKGROUND

Aiden was detained from his mother, Nicole C.,[2] after she was arrested on drug-related charges and left Aiden in the care of her boyfriend's sister. The child was filthy.

Father had been involved in another dependency and was denied visitation with another child for failure to comply with his case plan. Father had also multiple convictions for possession of controlled substance and one conviction for infliction of corporal injury on a spouse. The social worker located father in jail in Los Angeles on a conviction of possession of controlled substance where he was serving a 16-month sentence.

At the detention hearing, the juvenile court found father to be Aiden's presumed father. The court ordered family reunification services for father.

Father appeared at the following hearing and informed the court that his release date was February 23, 2013. The court ordered the Department of Children and Family Services (the Department) to provide father with reunification services once he was no longer incarcerated. Father's attorney provided the court with relative information sheets and explained that the current caretaker would be willing to monitor father's visits. Counsel asked the court to order the Department to evaluate the caretaker and other relatives to serve as visitation monitors and to facilitate telephone calls while father was in custody. The court ordered the Department to evaluate the monitors for father "once he's released from incarceration." The court also assured father he could write to Aiden.

---

[1] All further statutory references are to the Welfare and Institutions Code unless otherwise noted.

[2] Mother is not a party to this appeal.

2

The social worker was not able to interview father and so the record contains very little information about him.  In early November 2012 the social worker waited an hour to interview father at the Men's Central Jail only to be told he was "out to work" and his return time was unknown.  The jurisdiction report contained a statement that in 2002 father sexually abused an unrelated child, and from 2000 to 2003 father sexually abused another unrelated child.  The Department had no substantiating documentation about this allegation and neither mother nor the maternal aunt had any information about it.  However, the Department included in the petition an allegation under section 300, subdivision (d)**3** concerning father's sexual abuse of two unrelated children.  The Department recommended father be given reunification services.

At the November 2012 pretrial conference, father's attorney expressed concern that father had had no visits with Aiden.  Counsel requested the court grant father "some phone contact face to face while [father was] local . . . at Men's Central [Jail] -- and so far there's been nothing."  The juvenile court replied, *"That's probably due to the age of the child.  That's why the court's not going to order the child be taken to incarceration given the age*."  (Italics added.)  Counsel asked that the Department immediately facilitate frequent contact between father and the child's caregiver so that father could speak to the child by telephone and inquire after the child's well being.  The court declined to order contact between father and the caregiver believing that Aiden was "preverbal."  Counsel explained that the child was not preverbal as he was almost two years old, and father wanted to speak to the child by telephone.  The court denied the request for telephone contact between father and Aiden.

The parties agreed to submit to an amended petition alleging mother's drug possession and that father "has a criminal history, is currently incarcerated for drug

---

**3**     Section 300, subdivision (d) reads:  "The child has been sexually abused, or there is a substantial risk that the child will be sexually abused, as defined in Section 11165.1 of the Penal Code, by his or her parent or guardian or a member of his or her household, or the parent or guardian has failed to adequately protect the child from sexual abuse when the parent or guardian knew or reasonably should have known that the child was in danger of sexual abuse."

3

possession for sales, and is currently unable to take custody of his child." The court dismissed the counts alleging father's prior sexual abuse history. The negotiated case plan included reunification services for an incarcerated parent and awarded father three hours per week of monitored visitation. Although the minute order from the disposition hearing ordered the Department to provide father with monitored visits a minimum of three hours a week limited only to the availability of the monitor, the reporter's transcript indicates that the court denied visitation. The court stated on the record: "*given the age of the child, the court's not going to order face-to-face contact*. [¶] Department to ensure through the caretaker that father receive pictures, and any written letters from the father are to be given to the child." (Italics added.) Father appealed from the disposition order denying his request for face-to-face visits or phone contact with the child.

## DISCUSSION

Father argues that the order denying visitation was error because the juvenile court made no detriment finding and no finding that Aiden's safety would be jeopardized by visits and telephone calls with father. We agree.

Section 362.1, the general visitation statute directs in relevant part that "to maintain ties between the parent or guardian and any siblings and the child, and to provide information relevant to deciding if, and when, to return a child to the custody of his or her parent or guardian, or to encourage or suspend sibling interaction, any order placing a child in foster care, and ordering reunification services, shall provide as follows: [¶] (1)(A) . . . for visitation between the parent or guardian and the child. *Visitation shall be as frequent as possible, consistent with the well-being of the child*. [¶] (B) No visitation order shall jeopardize the safety of the child." (§ 362.1, subd. (a), italics added.)

With specific reference to incarcerated parents, section 361.5 provides "If the parent . . . is incarcerated . . . *the court shall order reasonable services unless the court determines, by clear and convincing evidence, those services would be detrimental to the child*. In determining detriment, *the court shall consider* the age of the child, the degree of parent-child bonding, the length of the sentence, the length and nature of the treatment,

the nature of the crime or illness, the degree of detriment to the child if services are not offered . . . the likelihood of the parent's discharge from incarceration . . . within the reunification time limitations described in subdivision (a), *and* any other appropriate factors. . . . Services may include, but shall not be limited to, all of the following: [¶] (A) Maintaining contact between the parent and child through collect telephone calls. [¶] (B) Transportation services, where appropriate. [¶] (C) Visitation services, where appropriate." (§ 361.5, subd. (e)(1), italics added.) It is manifest from the use of the word "shall" in section 361.5, subdivision (e)(1) combined with the fact the list of factors is given in the conjunctive, that the juvenile court must base its order concerning visitation for incarcerated parents on numerous factors, only one of which is the age of the child. (*In re Dylan T*. (1998) 65 Cal.App.4th 765, 767, 773-774.)

*Dylan T*. held over a decade ago that a juvenile court may not find detriment to a child visiting an incarcerated parent based on age without any further showing. (*In re Dylan T*., *supra*, 65 Cal.App.4th at p. 767.) The juvenile court there had ordered a reunification plan, but denied visits while the parent was incarcerated because " 'based upon the minor's age, visits while incarcerated are not in the minor's best interest.' " (*Id*. at p. 768.) The appellate court reversed this order. Based on sections 362.1 and 361.5, subdivision (e), and case law, the *Dylan T*. court concluded that "visitation between an incarcerated parent and a minor cannot be arbitrarily determined based on factors which do not show by clear and convincing evidence that visitation would be detrimental to the minor." (*In re Dylan T*., *supra*, at pp. 770-773.) "[T]he particular factor of the minor's age, without some supporting evidence demonstrating how the age of the minor resulted in detriment when visiting the incarcerated parent, cannot be utilized by itself to deny visitation. The court must consider each listed factor and any other additional factors when it determines detriment. Any one factor or combination of factors might result in a finding of detriment, but it must be shown by clear and convincing evidence how the factor or factors result in a detriment." (*Id*. at pp. 773-774.)

Here, the record contains nothing to indicate that the court considered any of the factors of detriment, other than Aiden's age, and made no determination--let alone by

clear and convincing evidence--that visiting father in jail would be detrimental to Aiden solely because of the child' age. Clearly, that is insufficient. (*In re Dylan T.*, *supra*, 65 Cal.App.4th at pp. 773-774.) The Department did not argue to the juvenile court or on appeal that visitation should be denied. Instead, the Department agreed to a case plan under which father *would have three hours of visitation per week*.[4] Thus, the record contains nothing from which we could infer detriment.

Of particular concern is the fact that Aiden was under the age of three when he was removed from his mother's custody and so this case is on "the dependency 'fast track,' " meaning that the juvenile court has the option of terminating reunification efforts after only six months. (*In re Dylan T.*, *supra*, 65 Cal.App.4th at p. 769, citing former section 361.5, subd. (a)(1)(B).) Without opportunity for some sort of visitation, it is "virtually impossible for [father] to achieve reunification." (*In re C.C.* (2009) 172 Cal.App.4th 1481, 1491-1492.) " 'The absence of visitation will not only prejudice a parent's interests at a section 366.26 hearing but may "virtually assure[] the erosion (and termination) of any meaningful relationship" between [parent] and child.' [Citation.]" (*In re Dylan T.*, *supra*, at p. 769.) "Because reunification efforts could be terminated after six months, the lack of all opportunity for visitation during a significant portion of this time is an error which could infect the outcome of [the dependency]. (*Id.* at p. 770.)

" 'Every parent and child, with few exceptions [citations] is entitled to a meaningful judicial evaluation of the . . . visitation question every time an order regarding reunification services is made.' [Citation.]" (*In re Dylan T.*, *supra*, 65 Cal.App.4th at p. 775.) Other than the juvenile court's two statements that it would not order visitation for father given Aiden's age, the record contains no evidence the

---

**4** Although the juvenile court's minute order awarded father three hours of visitation, the minute order directly conflicts with the reporter's transcript in which the court denied visitation. We conclude the court's oral ruling expresses the court's actual intent (*People v. Harrison* (2005) 35 Cal.4th 208, 226 [generally conflicts in record are harmonized; if harmony not possible, result depends on circumstances of case]) because the court twice denied father's request for visitation and the written minute order reflects the parties' negotiated disposition, not the ruling of the court.

court evaluated whether visitation between father and Aiden while father is incarcerated would be detrimental to Aiden. The juvenile court's visitation order, unsupported by "substantial evidence of detriment, was error and deprived [father] of a meaningful evaluation of the visitation question." (*Ibid.*)

## DISPOSITION

The order is reversed and the matter is remanded to the juvenile court to reconsider its orders concerning visitation while father is incarcerated. The previously ordered nonvisitation during father's incarceration shall not count against him in the court's evaluation of reunification and making of further orders.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

ALDRICH, J.

We concur:

CROSKEY, Acting P. J.

KITCHING, J.

7